*Robert L. Hernandez* for Harold Murray & another.

---

SOUTHEASTERN INSURANCE AGENCY, INC. *vs.* LUMBERMENS MUTUAL INSURANCE COMPANY. August 6, 1996. *Practice, Civil,* Parties. *Negligence,* Insurance company. *Indemnity.*

At issue is whether the negligence of Southeastern Insurance Agency,

Inc. (Southeastern), was the proximate cause of a loss sustained by Lumbermens Mutual Insurance Company (Lumbermens), thereby entitling Lumbermens to indemnification from Southeastern. A Superior Court judge held for Southeastern. Lumbermens appealed, and the Appeals Court affirmed.[1] *Southeastern Ins. Agency, Inc.* v. *Lumbermens Mut. Ins. Co.*, 38 Mass. App. Ct. 642, 649 (1995). We granted Lumbermens' application for further appellate review. We conclude that, because Commonwealth Automobile Reinsurers (CAR) was not joined as a party, we cannot determine whether Lumbermens is entitled to indemnification from Southeastern. See Mass. R. Civ. P. 19 (a), 365 Mass. 765 (1974).

In 1984, Southeastern wrote a commercial umbrella insurance policy for Don Adams Oil Company, Inc. (Adams), with Crum & Forster Insurance Companies (Crum & Forster). The Crum & Forster policy provided $1,000,000 in coverage and required, if the underlying insurance was fleet insurance, that such insurance be maintained at $300,000. In 1985, Southeastern wrote a primary commercial motor vehicle insurance policy for Adams with Lumbermens. The Lumbermens policy provided $300,000 in fleet insurance coverage. Lumbermens ceded the policy to Commonwealth Automobile Reinsurers (CAR) for 100% reinsurance.[2]

In order to prevent the possibility of a gap in coverage, Southeastern agreed with Adams to increase the primary coverage if subsequent renewal of the umbrella policy so required. In June, 1986, Southeastern received notice from Crum & Forster that an increase in underlying coverage from $300,000 to $500,000 was a requisite of renewal. Southeastern renewed the Crum & Forster policy effective September 1, 1986, but failed to increase the primary coverage with Lumbermens until January 1, 1987. On December 1, 1986, an Adams employee pumped fuel oil from an Adams truck into the water well rather than the in-ground oil tank of Robert and Jane Sylvia. Lumbermens paid $500,000, and now seeks indemnity from Southeastern for coverage not ceded to CAR.

Southeastern concedes that it was negligent in failing timely to increase Adams' primary coverage, but argues that its negligence was not the proximate cause of Lumbermens' loss. Southeastern relies on the general

---

[1]At oral argument, counsel for Lumbermens waived the argument that reformation of the contract was improper. See *Southeastern Ins. Agency, Inc.* v. *Lumbermens Mut. Ins. Co.*, 38 Mass. App. Ct. 642, 645 (1995). Therefore, we do not discuss this issue.

[2]Commonwealth Automobile Reinsurers (CAR) was created pursuant to G. L. c. 175, § 113H (1994 ed.), to make motor vehicle insurance available to persons who are unusually high risks and therefore unable to obtain coverage on the voluntary market. General Laws c. 175, § 113H (A) (1994 ed.), mandated the creation of "a plan which shall provide motor vehicle insurance to applicants who have been unable to obtain insurance through the method by which insurance is voluntarily made available." The plan adopted constitutes CAR's charter and constitution. See art. I of the Commonwealth Automobile Reinsurers Plan of Operation (1991). Under § 113H, companies called "servicing carriers" must issue insurance to virtually all applicants, but then may cede high risk policies to CAR. CAR apportions the premiums, losses, and expenses of ceded policies among all motor vehicle insurers. See *Hartford Accident & Indem. Co.* v. *Commissioner of Ins.*, 407 Mass. 23, 24 (1990); *Warner Ins. Co.* v. *Commissioner of Ins.*, 406 Mass. 354, 356 n.4 (1990). At all times relevant to this case, Lumbermens was a servicing carrier.

rule that an insurer is not entitled to indemnity from its negligent agent if, had the agent not been negligent, the insurer would have accepted and assumed the risk. Lumbermens admits that it would have increased Adams' primary coverage from $300,000 to $500,000 had it been requested to do so. For that reason, the Appeals Court concluded that Southeastern was not the proximate cause of any loss. See *Southeastern Ins. Agency, Inc.*, *supra* at 647-648. The flaw in that analysis is that it does not consider the fact that Lumbermens would have ceded the coverage to CAR. Because CAR is not before us, we cannot determine whether CAR would be required to accept a loss retroactively. If not, Southeastern could be viewed as proximately causing a loss to Lumbermens.

Rule 19 (a) permits a reviewing court to raise the "absence of an indispensable party . . . at any time . . . on its own motion." *Quabaug Rubber Co.* v. *Fabiano Shoe Co.*, 567 F.2d 154, 158 n.4 (1st Cir. 1977) (discussing cognate Federal rule, "the absence of an indispensable party may be raised at any time, even by a reviewing court on its own motion"). See *Pickle* v. *International Oilfields Divers, Inc.*, 791 F.2d 1237, 1242 (5th Cir. 1986), cert. denied, 479 U.S. 1059 (1987) (same).

The Superior Court judgment is vacated and the case is remanded to the Superior Court for further proceedings. On remand, CAR shall be joined as a party.

*So ordered.*

*Stephen M.A. Woodworth (Carroll D. Coletti* with him) for the defendant.
*Mary Alice McLaughlin* for the plaintiff.